## AFFIDAVIT OF SPECIAL AGENT DEREK M. DUNN

I, Derek M. Dunn, being duly sworn, hereby depose and state as follows:

## I. INTRODUCTION

1. I am a Special Agent with United States Immigration and Customs Enforcement ("ICE"), and have been so employed since April 2003. Prior to becoming a Special Agent with ICE, I worked with the United States Customs Service as a Regulatory Auditor for seven years and nine months. I am currently assigned to the Financial Investigations Group which primarily investigates crimes involving money laundering. During my career, I have conducted and assisted in several investigations of money laundering and financial related crimes. I have received specific training regarding these crimes during my tenure as a Special Agent.

2. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3. I am submitting this affidavit in support of a criminal complaint charging **JULIO VIANA**, d.o.b. 6/6/68, with (1) operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a)[1]; and (2) structuring transactions to

---

[1] 18 U.S.C. §1960(a) provides as follows: Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be

evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3).[2]

4. This affidavit does not contain all of the information known to me regarding this criminal investigation but those facts which are sufficient to establish probable cause for the issuance of the requested complaint. These facts contained herein are either personally known to me, or have been related to me by other federal, state, or local law enforcement officers or employees.

---

[guilty of a crime.]
   Unlicensed money transmitting business is defined at 18 U.S.C. §1960(b)(1)(A) as a money transmitting business which affects interstate or foreign commerce in any manner or degree and is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable.
   Pursuant to M.G.L. c. 169, Section 3, a person is required to have a license to transmit money in interstate or foreign commerce. Pursuant to M.G.L. c. 169, Section 16, a violation of this rule or regulation is punishable by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or both.

[2]31 U.S.C. §5324(a)(3) provides, in relevant part: No person shall, for the purpose of evading the reporting requirements of section 5313(a) or 5325, or any regulation prescribed under any such section, the reporting or recordkeeping requirement imposed by any order issued under section 5326, or the recordkeeping requirements imposed by any regulations prescribed under section 21 of the Federal Deposit Insurance Act or section 123 of Public Law 91-508, structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

## II. FACTS AND CIRCUMSTANCES

*A. Background*

5. Beginning in and about August of 2004, bank records from the Luso-American Credit Union ("Luso") were reviewed by the Internal Revenue Service, Criminal Investigations Division. The information indicated that there were a large volume of structured cash deposits into an account with an account number 01-23-303208 ("Account 01-23-303208"), under the name of Adilson DeSouza ("DeSouza") d/b/a MG Telecommunications ("MGT") located at 111 Central Street, Peabody, MA. Luso had a business card on file listing the business location of MGT as also that of 47 Main Street, Peabody, MA.

6. Surveillance of 47 Main Street, Peabody, MA. revealed that there was a variety store at that location. The store operated under the name of Family Market. Further investigation revealed that the owner of Family Market is Mario Viana. During the course of the investigation, investigators received a copy of a tax document filed by Mario Viana in support of a request for a bank loan. The tax document listed 47 Main Street as the address of his business.

7. Investigation has revealed that 111 Central Street is a residence. The deed for this property is on record with the Essex County Registry of Deeds. The deed notes that the property was

purchased by Mario Viana and his wife, Sandra Santos Viana as tenants by the entirety.

8. Information gathered during the course of this investigation reveals that Mario Viana and **JULIO VIANA** are brothers.

B. *Information Provided by DeSouza*

9.  DeSouza, whose name appears on the account of MGT, is a native and citizen of Brazil currently living in the United States. DeSouza was interviewed and provided the following information:

10. DeSouza stated that he was smuggled into the United States around May 2002. Prior to coming to the United States, DeSouza met an individual named "Carlos" LNU in Brazil. DeSouza agreed to pay "Carlos" $7,000 to be smuggled in the United States. When DeSouza arrived in the United States, he discovered that "Carlos" was working at a store called Louisiana Travel located on Main Street in Amesbury, MA. Investigation has revealed that Louisiana Travel was owned and operated by Mario Viana. DeSouza was taken by Mario Viana to work at Louisiana Travel until DeSouza's smuggling fee was paid off. DeSouza worked for approximately one year at Louisiana Travel and was not paid by Mario Viana as all monies earned were put to paying off his smuggling debt.

4

11. According to DeSouza, Mario Viana also operated a store called Louisiana Travel on 47 Main Street in Peabody, MA. Mario Viana changed the name of this store to Family Market. According to DeSouza, Mario Viana closed Louisiana Travel shortly after an article was written in a Brazilian newspaper which indicated that Mario Viana was sending money to Brazil to be used for smuggling people into the United States. DeSouza then worked at the Family Market in Peabody, MA. Mario Viana's brother, **JULIO VIANA**, also worked at the store. DeSouza's primary responsibility while working at Louisiana Travel and at Family Market was to conduct wire transfers for people sending money to Brazil.

12. Mario Viana told DeSouza that when he (Viana) travels to Brazil, he offers to bring people into the United States for a fee of approximately $10,000. Mario Viana pays the smuggling fees but makes the individuals sign over their deeds to property in Brazil. In addition to the fee of approximately $10,000, Mario Viana also charges monthly interest of 5 to 7 percent until the fee is paid off in full. If the fee is not paid, Mario Viana keeps the deed to the property in Brazil.

13. While working at the Family Market, Mario Viana requested DeSouza to open a bank account. With Mario Viana present, a bank account was opened at the Luso under DeSouza's

name d/b/a MGT. The account was controlled by Mario Viana and **JULIO VIANA**.

14. **JULIO VIANA** filled out the deposit slips and gave them to DeSouza with the cash and/or checks to be deposited. **JULIO VIANA** also filled out the checks drawn against the account and had DeSouza sign them. **JULIO VIANA** also instructed DeSouza how much money to wire out of the account and to where. DeSouza was not aware how much of the money deposited into the account was from individuals sending money to Brazil or from individuals making payments toward their smuggling fee.

C. *Structured Cash Deposits*

15. A review of the Luso bank account number 01-23-303208 shows several instances where efforts were made to structure cash deposits to evade currency reporting requirements.[3] For example, a total of $46,000 in cash was deposited into the account over a five day period as follows:

| Date | Cash Deposit |
|---|---|
| 02/03/2004 | $9,000.00 |
| 02/04/2004 | $9,000.00 |
| 02/05/2004 | $9,000.00 |
| 02/06/2004 | $9,500.00 |
| 02/07/2004 | $9,500.00 |

---

[3] 31 CFR §103.22(b)(1) requires financial institutions to file currency transactions reports when a deposit is $10,000 or more.

6

As shown below, there were several days when two deposits were made within a few hours of each other. On each of these dates, each deposit was $10,000 or less; however, the total cash deposited was greater than $10,000.

| Date       | Time     | Cash Deposit |
|------------|----------|--------------|
| 03/24/2004 | 9:48 AM  | $ 6,000.00   |
| 03/24/2004 | 12:54 PM | $ 5,000.00   |
| 07/08/2004 | 11:22 AM | $ 8,500.00   |
| 07/08/2004 | 12:13 PM | $10,000.00   |
| 07/17/2004 | 11:34 AM | $ 8,000.00   |
| 07/17/2004 | 12:22 PM | $ 9,000.00   |
| 07/21/2004 | 9:16 AM  | $ 9,500.00   |
| 07/21/2004 | 11:14 AM | $ 1,500.00   |

16. According to DeSouza, one of the initial deposits he attempted to make into the above account was for more than $10,000 in cash. The deposit was not made because the bank representative asked for DeSouza's identification. DeSouza returned to FAMILY MARKET with the cash and informed **JULIO VIANA** that the bank asked for identification. **JULIO VIANA** advised DeSouza that he would keep the deposits below $10,000 in the future.

7

## III. UNLICENCED MONEY REMITTING SERVICE

17. On January 27, 2005, the Massachusetts Division of Banks ("MDB") provided information regarding licenses issued for Family Market and/or MGT to operate as a money transmittal business. According to MBD, at that point in time neither business was licensed to remit monies.

18. Family Market had previously been issued a license to operate as an agent for Remesis Quisqueyana, Inc. and Uno Money Transfers.

19. However, according to the MDB, Family Market's license to operate as an agent for Remesis Quisqueyana, Inc. expired on June 30, 2003.

20. Additionally, according to documentation received from Uno Money Transfers, Family Market's license to operate as one of their agents was terminated on January 6, 2004. The license was terminated due to Uno Money Transfers inability to obtain personal information from the manager of the business, **JULIO VIANA**, and the high number of returned electronic funds

21. An analysis of Luso account number 01-23-303208 shows that from January 30, 2004 through July 21, 2004, approximately $1.2 million was deposited into the account of which approximately $920,000 was cash. Nearly all of this money was

wire transferred out of the account to four companies located in the state of Florida as follows:

| Wire Beneficiary | Total Wired (Approx.) |
|---|---|
| Money Express | $ 647,000 |
| Intertransfers, Inc. | $ 257,000 |
| Golden Eagle, Inc. | $ 208,000 |
| Fox International | $ 38,000 |

22. According to DeSouza, an associate of Mario Viana's in Brazil would pay the individuals receiving money in Brazil. A fax would then be sent from Brazil to **JULIO VIANA**'s attention at Family Market with a listing of all individuals paid and amounts paid. The fax would also include a total amount with instructions on where to wire the funds. For example, DeSouza provided a copy of a document with a fax date of April 7, 2004 that was received at Family Market from Brazil showing individuals names, amounts paid, and a total of $81,304.83. On April 8, 2004, two wire transfers totaling $81,304 were requested to be sent to Money Express from two different accounts at the Luso. One wire in the amount of $39,304 was requested by DeSouza to be drawn against the DeSouza d/b/a MGT account number 01-23-3030208. A second wire in the amount of $42,000 was requested by Tatiana Viana to be drawn against account number 23-303213. Both

9

Tatiana Viana and her husband **JULIO VIANA** have signatory authority on this account.

23. A review of Account 01-23-303208 held at Luso shows that a check in the amount of $42,622.04, drawn against an account in the name of Eduardo Craveiro, was deposited into the MGT account on June 22, 2004. On January 10, 2005, Eduardo Craveiro was interviewed regarding the check drawn against his account. Eduardo Craveiro stated that the check was for the purchase of land in Brazil and that an employee at his restaurant brought him to a Brazilian store on Main Street in Peabody, Massachusetts to send the money to Brazil. Eduardo Craveiro did not know the name of the store, owner, or employees but stated that the store was located across the street from the Public Library. Family Market is located at 47 Main Street across the street from the Public Library. Eduardo Craveiro stated that the money he sent was received in Brazil a few days later.

24. A further review of Account 01-23-303208 also shows that two checks in the amounts of $1,170 and $3,146, drawn against an account in the name of Fernando Bonini, were deposited on January 28, 2004 and March 31, 2004, respectively.

25. On January 13, 2005, Fernando Bonini, an illegal immigrant, was interviewed regarding the checks drawn against his account. Fernando Bonini stated that the checks were given to

someone at Louisiana Travel in downtown Peabody for remission to Brazil. As previously stated, Louisiana Travel is operated by Mario Viana. Fernando Bonini stated that the money was sent to Brazil for the purchase of a house from his father.

## IV. CONCLUSION

26. Based on the foregoing information, I believe probable cause exists to conclude that **JULIO VIANA**, (1) beginning at a time unknown but no later than February of 2004, the exact dates being unknown, operate an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a); and (2) structured transactions to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3).

```
                                   _____
                                   Derek M. Dunn
                                   Special Agent
                                   Immigration and Customs Enforcement
```

Subscribed and sworn to before me this 22nd day of June, 2005

_____
CHARLES B. SWARTWOOD
UNITED STATES MAGISTRATE JUDGE

11

%JS 45 (5/97) - (Revised USAO MA 6/29/04)

**Criminal Case Cover Sheet**                              **U.S. District Court - District of Massachusetts**

**Place of Offense:** _____    **Category No.** II    **Investigating Agency** ICE/IRS

**City** Peabody            **Related Case Information:**

**County** Essex
Superseding Ind./ Inf. _____  Case No. _____
Same Defendant _____  New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name  JULIO VIANA            Juvenile  [ ] Yes  [X] No

Alias Name _____

Address _____

Birth date (Year only): 1968   SSN (last 4 #): ____   Sex M   Race: H   Nationality: BRAZILIAN

Defense Counsel if known: _____   Address: _____

Bar Number: _____

**U.S. Attorney Information:**

AUSA  N. PELLEGRINI            Bar Number if applicable _____

Interpreter:  [X] Yes  [ ] No    List language and/or dialect:  Portuguese

Matter to be SEALED:  [x] Yes  [ ] No

[x] Warrant Requested     [ ] Regular Process     [ ] In Custody

**Location Status:**

**Arrest Date:** _____

[ ] Already in Federal Custody as _____ in _____
[ ] Already in State Custody _____   [ ] Serving Sentence   [ ] Awaiting Trial
[ ] On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**   [x] Complaint   [ ] Information   [ ] Indictment

Total # of Counts:   [ ] Petty ____   [ ] Misdemeanor ____   [x] Felony ____

Continue on Page 2 for Entry of U.S.C. Citations

[x]  I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: 6/22/05            Signature of AUSA:  _/s/ Rockefeller_

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

**District Court Case Number** (To be filled in by deputy clerk): _____

**Name of Defendant** _____

U.S.C. Citations

| | **Index Key/Code** | **Description of Offense Charged** | **Count Numbers** |
|---|---|---|---|
| Set 1 | _____ | Unlicensed Money remitter | _____ |
| Set 2 | _____ | Structuring Financial | _____ |
| Set 3 | _____ | _____ | _____ |
| Set 4 | _____ | _____ | _____ |
| Set 5 | _____ | _____ | _____ |
| Set 6 | _____ | _____ | _____ |
| Set 7 | _____ | _____ | _____ |
| Set 8 | _____ | _____ | _____ |
| Set 9 | _____ | _____ | _____ |
| Set 10 | _____ | _____ | _____ |
| Set 11 | _____ | _____ | _____ |
| Set 12 | _____ | _____ | _____ |
| Set 13 | _____ | _____ | _____ |
| Set 14 | _____ | _____ | _____ |
| Set 15 | _____ | _____ | _____ |

**ADDITIONAL INFORMATION:**